**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Nina Y. Wang**

Civil Action No. 21-cv-02030-NYW

JOHN MEGGS,

     Plaintiff,

v.

DILLON COMPANIES, LLC,

     Defendant.

---

## MEMORANDUM OPINION AND ORDER

---

This matter is before the Court on Defendant Dillon Companies, LLC's ("Dillon" or "Defendant") Motion for Summary Judgment ("Motion for Summary Judgment" or "Motion"), [Doc. 33, filed April 29, 2022]. After carefully considering the Parties' briefing and the applicable case law, this Court respectfully **GRANTS** the Motion for Summary Judgment.[1]

### BACKGROUND

This action was initiated on July 27, 2021, when Plaintiff John Meggs ("Plaintiff" or "Mr. Meggs") filed a Complaint against former defendant KRF Commerce City LLC ("KRF") and Defendant Dillon, seeking remediation of architectural barriers Plaintiff claims he encountered when he visited a shopping center, pursuant to Title III of the Americans with Disabilities Act ("ADA"). *See* [Doc. 1].

---

[1] This civil action was originally assigned to the undersigned in her capacity as Magistrate Judge for a decision on the merits pursuant to the Parties' consent. *See* [Doc. 12]; 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; D.C.COLO.LCivR 72.2. On July 22, 2022, Judge Nina Y. Wang was appointed as a United States District Judge and retained assignment to this action as the presiding judge. *See* [Doc. 50].

Mr. Meggs asserts two causes of action in the Complaint: the first is against KRF (Count I), and the second is against both KRF and Dillon (Count II). [*Id.* at ¶¶ 21–34]. [2] Plaintiff seeks the following relief: (1) a declaratory judgment that Defendant is in violation of the ADA; (2) an injunction against Defendant and an order that Defendant "make all readily achievable alterations to the facilities" or "make such facilities readily accessible to and usable by individuals with disabilities to the extent required by the ADA" and "make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities" so that "no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services"; and (3) attorneys' fees, costs, and litigation expenses pursuant to 42 U.S.C. § 12205, [*id.* at 10].

On April 29, 2022, Dillon filed the instant Motion for Summary Judgment. [Doc. 33]. Mr. Meggs responded to the Motion on June 14, 2022, *see* [Doc. 40], and Dillon replied on June 28, 2022, *see* [Doc. 41]. On July 12, 2022, the court held a Final Pretrial Conference and set this matter for a three-day bench trial to begin on November 18, 2022. *See* [Doc. 46]. The Motion is thus ripe for disposition.[3]

---

[2] On March 17, 2022, Plaintiff and then-Defendant KRF jointly stipulated to the dismissal with prejudice of Plaintiff's claims against KRF. *See* [Doc. 29].

[3] On July 11, 2022, Plaintiff filed an Unopposed Motion for a Settlement Conference or to Mediate in the Alternative ("Motion for Settlement Conference"), requesting a settlement conference with the Court or, in the alternative, an order directing the Parties to participate in private mediation. [Doc. 45]. On July 26, 2022, the Court granted in part and denied in part the Motion for Settlement Conference, and ordered the Parties to participate in mediation, up to one day, to be completed before a private mediator no later than September 30, 2022. *See* [Doc. 48]. The Court also ordered the Parties to file a Status Report no later than October 5, 2022, indicating whether resolution was reached at the mediation or whether trial shall proceed on November 30, 2022. [*Id.*]. Although these deadlines have not yet passed, the Court finds it appropriate to rule on the instant Motion. *See* D.C.COLO.LCivR 7.1(d) ("Nothing in this rule precludes a judicial officer from ruling on a motion at any time after it is filed.").

## LEGAL STANDARDS

In the Motion, Defendant seeks dismissal of Plaintiff's claim against it (Count II) pursuant to both Rule 12(b)(1) and Rule 56 of the Federal Rules of Civil Procedure. *See* [Doc. 33 at 1, 5–6]. But Defendant also appears to insist the Court should only rely upon Rule 12(b)(1) on the basis that the Motion "relates to subject matter jurisdiction." [*Id.* at 6]. Some courts have determined that Rule 12(b)(1) motions are the more appropriate vehicle because a motion for summary judgment is an adjudication on the merits. *See, e.g.*, *House v. Mitra QSR KNE LLC*, 796 F. App'x 783, 787 n.2 (4th Cir. 2019) (citing *Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995); 5B Charles Alan Wright & Arthur Miller, *Federal Practice and Procedure* § 1350 n.33 (3d ed. 2022) (collecting cases)).

But other courts, including in this District, have used summary judgment as the vehicle in which to consider standing. *See, e.g.*, *Common Cause of Colo. v. Buescher*, 750 F. Supp. 2d 1259, 1269 (D. Colo. 2010) (citing *Dept. of Commerce v. United States House of Representatives,* 525 U.S. 316, 329 (1999)); *Lujan v. National Wildlife Federation,* 497 U.S. 871, 883–884 (1990)). Indeed, a motion for summary judgment is a "frequently used method" to determine standing challenges*. Israel Bio-Engr. Project v. Amgen, Inc.*, 475 F.3d 1256, 1263 (Fed. Cir. 2007) ("Although there are multiple ways to dispose of challenges to standing in the district court, the parties here addressed standing through a motion for summary judgment, one frequently used method." (citing 13A Wright & Miller, *Federal Practice and Procedure* § 3531.15 (2d ed. 1984)); *see also Lujan*, 504 U.S. at 578 (holding that the respondents lacked standing to bring their action and that the Court of Appeals erred in denying the United States' summary judgment motion); *Tandy v. City of Wichita*, 380 F.3d 1277, 1284 (10th Cir. 2004) (analyzing standing on motion for summary judgment); 13B Wright & Miller, *Federal Practice & Procedure* § 3531.15 (3d ed. 2022) (explaining that a "defendant can insist that a factual inquiry into standing be made before trial"

and "[m]any cases have suggested that summary-judgment procedure is appropriate for this purpose," but noting "[i]t is not clear how far the general summary-judgment burdens may be specially tailored to questions of standing by the decision in *Lujan v. Defenders of Wildlife*").

In light of this authority, and the fact that the plain language of Rule 12 indicates that "[a] motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed,"[4] this Court proceeds pursuant to Rule 56 for deciding the instant Motion, despite the fact that Defendant primarily challenges Plaintiff's standing to bring her claim.[5]  *See* [Doc. 33].

## I.     Federal Rule of Civil Procedure 56

"When standing is challenged in a motion for summary judgment that is made and supported as provided by Rule 56(c), a plaintiff may not rest upon the allegations of injury, causation, and redressability in its complaint, but must respond, with affidavits or as otherwise provided in the rule, with facts demonstrating a genuine issue for trial."  *Buescher*, 750 F. Supp. 2d at 1269; *see also Hamilton v. High Mountain Mining Co*., LLC, No. 15-cv-0072-WJM-MEH, 2015 WL 7068762, at *4 (D. Colo. Nov. 12, 2015), *relief from judgment granted*, No. 15-cv-0072-WJM-MEH, 2016 WL 8487966 (D. Colo. June 22, 2016).  Under Rule 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A dispute is genuine if there is sufficient evidence so that a rational trier of fact could resolve the issue either way.  A

---

[4] Dillon filed an Answer in this case on August 30, 2021.  [Doc. 7].  It challenged Plaintiff's standing in its Seventh Affirmative Defense, [*id.* at 5], but did not file a separate motion under Rule 12(b)(1).

[5] Ultimately, the analysis under Rule 56 and 12(b)(1) are essentially the same.  *Brito v. Denver Convention Ctr. Hotel Auth.*, No. 20-cv-02719-PAB-KMT, 2021 WL 4149619, at *2 (D. Colo. Sept. 13, 2021) (citing *Trentacosta v. Frontier Pac. Aircraft Indus., Inc*., 813 F.2d 1553, 1559 (9th Cir. 1987) (noting that nonmovant's burden under Rule 12(b)(1) is essentially the same as Rule 56(e)'s requirement that the nonmoving party to a motion for summary judgment set forth specific facts, beyond his pleadings, to show that a genuine issue of material fact exists)).

fact is material if under the substantive law it is essential to the proper disposition of the claim." *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011) (internal citations and quotation marks omitted).  It is the movant's burden to demonstrate that no genuine dispute of material fact exists for trial, whereas the nonmovant must set forth specific facts establishing a genuine issue for trial.  *See Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010).  At all times, the court will "view the factual record and draw all reasonable inferences therefrom most favorably to the nonmovant."  *Zia Shadows, L.L.C. v. City of Las Cruces*, 829 F.3d 1232, 1236 (10th Cir. 2016).

To satisfy his burden at summary judgment, Mr. Meggs, as the nonmovant, must point to competent summary judgment evidence creating a genuine dispute of material fact; conclusory statements based on speculation, conjecture, or subjective belief are insufficient.  *See Bones v. Honeywell Int'l, Inc.,* 366 F.3d 869, 875 (10th Cir. 2004); *see also* 10B Wright & Miller, *Federal Practice and Procedure* § 2738 (4th ed. 2022) (explaining that the nonmovant cannot rely on "mere reargument of [his] case or the denial of an opponent's allegations" to defeat summary judgment). In considering the nonmovant's evidence, the court cannot and does not weigh the evidence or determine the credibility of witnesses.  *See Fogarty v. Gallegos*, 523 F.3d 1147, 1165 (10th Cir. 2008).  Further, the court may consider only admissible evidence, *see Gross v. Burggraf Const. Co.*, 53 F.3d 1531, 1541 (10th Cir. 1995), though the evidence need not be in a form that is admissible at trial—only the substance must be admissible at trial, *see Brown v. Perez*, 835 F.3d 1223, 1232 (10th Cir. 2016).  Indeed, "[t]o determine whether genuine issues of material fact make a jury trial necessary, a court necessarily may consider only the evidence that would be available to the jury."  *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006).

A.      **ADA Title III**

Title III of the ADA prohibits discrimination against persons with disabilities in places of public accommodation. *See* 42 U.S.C. § 12182(a).  For violations of Title III, a plaintiff may seek prospective injunctive relief only; monetary damages are unavailable.  *See Lewis v. Burger King*, 361 F. App'x 937, 938 n.1 (10th Cir. 2010); *accord A.R. v. Kogan*, 964 F.Supp. 269, 271 (N.D. Ill. 1997) (explaining that relief under Title III is "specifically limited to providing injunctive relief and *not* damages" (emphasis in original)).

## ANALYSIS

A.      **Motion for Summary Judgment**

As mentioned above, Mr. Meggs asserts his second claim, Count II, against both KRF and Dillon, alleging that they "have discriminated against the individual Plaintiff by denying him access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the Commercial Property and other business located within the Commercial Property."  [Doc. 1 at ¶ 25].  With respect to Dillon specifically, Mr. Meggs alleges as follows:

> [ ] Check-out, self-service and work surfaces at King Soopers and other stores are inaccessible to the plaintiff and violate various ADAAG and 2010 ADAS requirements.
>
> . . .
>
> [ ] The restroom door lacks maneuvering space preventing Mr. Meggs' exit due to obstructions violating the ADAAG and 2010 ADAS Section 404.
>
> [ ] Mr. Meggs could not use the lavatory paper towels, toilet paper and mirror which are inaccessible violating the ADAAG and 2010 ADAS Sections 308, 309, 603, 604 and 606.
>
> [ ] Mr. Meggs could not use the water closet with improper centerline > 18" from the side wall, seat < 17" AFF and obstructed side grab bar violating ADAAG Section 4.16 and 2010 ADAS Section 604.

[*Id.* at ¶ 26].

In the Motion, Dillon seeks summary judgment against Mr. Meggs on three jurisdictional grounds.  First, Defendant argues that Plaintiff lacks standing to assert claims against Dillon with respect to any architectural barriers on the Commercial Property *outside* the Store because "those violations are beyond the control of Dillon" as Dillon lacks "authority over the Commercial Property's parking lot or other stores as alleged by Plaintiff."   [Doc. 33 at 7–10].   Second, Defendant argues that Plaintiff's claim is moot because the architectural barriers at the Grocery Store have been remedied.  [*Id.* at 10–12].  Third, Defendant contends that Plaintiff lacks standing because he cannot establish an injury in fact—specifically, a threat of present or future harm.  [*Id.* at 12–14].[6]

## B.     The Choice Between Jurisdictional Issues

Federal courts are courts of limited jurisdiction.  Under Article III of the United States Constitution, federal courts only have jurisdiction to hear certain "cases" and "controversies."  *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014).  As such, courts "are duty bound to examine facts and law in every lawsuit before them to ensure that they possess subject matter jurisdiction."  *The Wilderness Soc. v. Kane Cty., Utah*, 632 F.3d 1162, 1179 n.3 (10th Cir. 2011)

---

[6] The Court will address the relevant portions of Plaintiff's Response, [Doc. 40], in turn below. However, the Court notes here that in the Response, Plaintiff claims he "sought discovery, including an inspection of the interior property, specifically Defendant Dillon's grocery store" but Defendant "objected to it." [Doc. 40 at 1–2].  Plaintiff likewise states that Defendant "refused to allow Plaintiff access and basic discovery and lead [sic] Plaintiff to believe that the case was resolved." [*Id.* at 5].  However, Plaintiff provides no support for these assertions.  In addition, discovery closed on March 18, 2022, *see* [Doc. 19], and Plaintiff did not raise any discovery concerns during or after that time, whether in a motion to compel or when the Parties jointly moved to modify the scheduling order on April 14, 2022—nearly a month after the discovery deadline— and failed to mention any discovery issues in that motion.  *See* [Doc. 31].  Plaintiff also fails to seek any further discovery under Rule 56(d).  *See* Fed. R. Civ. P. 56(d) ("If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.").

(Gorsuch, J., concurring).  Indeed, courts have an independent obligation to determine whether subject matter jurisdiction exists, even in the absence of a challenge from any party.  *1mage Software, Inc. v. Reynolds & Reynolds, Co.*, 459 F.3d 1044, 1048 (10th Cir. 2006) (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006)).

"Mootness and standing are jurisdictional."  *Citizen Ctr. v. Gessler*, 770 F.3d 900, 906 (10th Cir. 2014) (citing *WildEarth Guardians v. Pub. Serv. Co. of Colo.,* 690 F.3d 1174, 1182 (10th Cir. 2012)).  Because "[t]here is no mandatory 'sequencing of nonmerits issues,'" courts have "leeway 'to choose among threshold grounds for denying audience to a case on the merits.'" *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.,* 549 U.S. 422, 431 (2007) (quoting *Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 584–85 (1999)).  Here, the court will begin and end its analysis by addressing Dillon's third jurisdictional challenge—namely, that Mr. Meggs lacks standing on the basis that he cannot establish an injury in fact.[7]

## C.   Undisputed Material Facts

The Parties' briefing identifies only one undisputed material fact: Dillon operates a King Soopers grocery store (the "Grocery Store") located at  4850 E. 62nd Avenue, Commerce City, Colorado 80022.  *See* [Doc. 40 at 3; Doc. 41 at 2]; *see also* [Doc. 1 at ¶ 8; Doc. 7 at ¶ 8].  In addition, the Court finds the following undisputed material facts:

1.   Mr. Meggs resides in California.  [Doc. 40-1 at ¶ 2].

---

[7] In any event, Defendant's mootness argument fails. Defendant insists in the Motion that it remediated the alleged violations related to the Grocery Store identified in the Complaint ", including any 'check-out, self-service, and work surfaces.'"  [Doc. 33 at 2, 3]; *see also* [Doc. 33-1; Doc. 33-2].  However, on Reply, Defendant implicitly concedes that all the remediations have not been performed to the restroom barriers identified in the Complaint.  *Compare* [Doc. 1 at ¶ 26.B.] *with* [Doc. 41 at 8 ("Dillon is constructing new restrooms as it awaits final permits.")].  The Court expressly does not pass on the merits of Plaintiff's claims or Defendant's remaining arguments, including the assertion that it is "not subject to the 2010 [ADA] Standards."  [Doc. 33 at 3].

2.      Mr. Meggs visited the Grocery Store one time on May 22, 2021.  [*Id.* at ¶ 8].

**D.     Standing**

"The standing inquiry ensures that a plaintiff has a sufficient personal stake in a dispute to ensure the existence of a live case or controversy which renders judicial resolution appropriate." *Tandy*, 380 F.3d at 1283.  To establish standing, a plaintiff must show he (1) suffered an injury in fact that (2) is fairly traceable to the defendant's conduct and (3) can be redressed by a favorable judicial decision.  *See Baker v. USD 229 Blue Valley*, 979 F.3d 866, 871 (10th Cir. 2020).  The elements of standing "are not mere pleading requirements but rather an indispensable part of the plaintiff's case." *Lujan*, 504 U.S. at 561.  Therefore, Article III standing cannot be assumed; the court must resolve issues of standing before it may reach the merits of an issue.  *See Colorado Outfitters Ass'n v. Hickenlooper ("Colorado Outfitters II")*, 823 F.3d 537, 543 (10th Cir. 2016).

The standing elements "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561.  Thus, where, as here, standing is raised at the summary judgment stage, "the plaintiff can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts." *Id.* (internal quotation marks omitted); *see also Tandy*, 380 F.3d at 1288 ("At the summary judgment stage of litigation, the elements of standing must be set forth by affidavit or other evidence."); *Colo. Cross Disability Coalition v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1211 (10th Cir. 2014) ("In response to a summary judgment motion, a plaintiff must support each element of standing by setting forth, through affidavit or other evidence, specific facts, which for purposes of the summary judgment motion will be taken to be true." (cleaned up) (citation omitted)).  Nevertheless, standing is assessed as of the date when the complaint was filed.  *See Planned Parenthood of Kansas v.*

*Andersen*, 882 F.3d 1205, 1217 (10th Cir. 2018) (explaining that the court "must determine standing as of the time the action is brought." (internal quotations omitted)).

In the Motion, Dillon argues that Mr. Meggs cannot establish the first element of standing—an injury in fact—because there is no threat of present or future harm. [Doc. 33 at 12–14]. As explained below, the Court finds that Plaintiff fails to adduce sufficient evidence of a threat of future harm for the purposes of the prospective injunctive relief Mr. Meggs seeks to survive summary judgment on this issue.

### 1.     Injury in Fact

The injury in fact requirement "involves invasion of a legally protected interest that is concrete, particularized, and actual or imminent." *Citizen Ctr. v. Gessler*, 770 F.3d 900, 910 (10th Cir. 2014). This "requirement is satisfied differently depending on whether the plaintiff seeks prospective or retrospective relief." *Tandy*, 380 F.3d at 1283. "When prospective relief—such as an injunction—is sought, 'the plaintiff must be suffering a continuing injury or be under a real and immediate threat of being injured in the future.'" *Colo. Cross*, 765 F.3d at 1211 (quoting *Tandy*, 380 F.3d at 1283)). "Past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury." *Tandy*, 380 F.3d at 1283 (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)). However, "[t]he threatened injury must be 'certainly impending' and not merely speculative." *Id.* (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000)). Conjectural or hypothetical injuries, or future injuries that are not certainly impending, are insufficient. *See Brown v. Buhman*, 822 F.3d 1151, 1165 (10th Cir. 2016). On the other hand, a plaintiff seeking retrospective relief "satisfies the 'injury in fact' requirement if []he suffered a past injury that is concrete and particularized." *Tandy*, 380 F.3d at 1284.

In the Complaint, Mr. Meggs seeks, *inter alia*, (1) a declaratory judgment that Defendant is in violation of the ADA; and (2) an injunction against Defendant and an order that Defendant

remediate the architectural barriers at the Grocery Store and modify its policies so that "no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services." [Doc. 1 at 10]. A declaratory judgment and injunction are forms of prospective relief. *See, e.g.*, *Collins v. Daniels*, 916 F.3d 1302, 1314 (10th Cir. 2019) (declaratory relief); *Colo. Cross*, 765 F.3d at 1211 (injunctive relief). *But see PeTA, People for the Ethical Treatment of Animals v. Rasmussen*, 298 F.3d 1198, 1203 (10th Cir. 2002) (explaining that "[w]hile a declaratory judgment is generally prospective relief, in some situations it has been recognized as retrospective"; and "consider[ing] declaratory relief retrospective to the extent that it is intertwined with a claim for monetary damages that requires [the court] to declare whether a past . . . violation occurred").

Thus, to establish injury in fact for purposes of prospective relief, Mr. Meggs must "be suffering a continuing injury or be under a real and immediate threat of being injured in the future." *Tandy*, 380 F.3d at 1283. "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495–96, (1974); *see also Dias v. City and Cty. of Denver*, 567 F.3d 1169, 1177 (10th Cir. 2009) ("Only by alleging a continuing injury can a plaintiff seeking prospective relief establish an injury in fact.").

### 2.   Intent to Return

The court's focus is on whether Mr. Meggs establishes a certainly impending future injury. To satisfy this requirement, Mr. Meggs must adduce sufficient evidence "suggest[ing] a concrete, present plan to return to" the Grocery Store *Colo. Cross*, 765 F.3d at 1212. The Tenth Circuit has found this requirement met when a plaintiff establishes his intent to return "several times each year." *Brito v. Denver Convention Ctr. Hotel Auth.*, No. 20-cv-02719-PAB-KMT, 2021 WL

4149619, at *3 (D. Colo. Sept. 13, 2021) (quoting *Tandy*, 380 F.3d at 1284–85) (quotation marks omitted).

In the Motion, Defendant cites a four-factor test endorsed by others in this District as the operative test for determining whether a plaintiff has satisfied an injury in fact as demonstrated by his intent to return to a public accommodation. *See* [Doc. 33 at 13]. This test asks the court to consider: "(1) the proximity of defendant's business to plaintiff's residence, (2) the plaintiff's past patronage of defendant's business, (3) the definitiveness of plaintiff's plans to return, and (4) the plaintiff's frequency of travel near defendant." [*Id.* (quoting *Brito v. Big Lots Stores, Inc.*, No. 17-cv-02052-CMA-KMT, 2017 WL 5665057, at *3 (D. Colo. Nov. 27, 2017) (collecting cases))]. Mr. Meggs does not object to the applicability of this test. *See* [Doc. 40 at 9–11].

The Court pauses here to consider whether this four-factor test is indeed appropriate on a motion for summary judgment. Although the Tenth Circuit has not expressly endorsed this test, *see Cohan v. Aurora Hosp., LLC*, No. 19-cv-00784-PAB-NRN, 2020 WL 1322866, at *3–4 (D. Colo. Mar. 20, 2020), this Court finds the test is consistent with decisions from the Tenth Circuit analyzing ADA plaintiffs' intentions to return to utilize public accommodations. For instance, in *Tandy*, a group of ADA testers, most of whom did not live in the Wichita, Kansas area, all attempted to ride the Wichita bus system. 380 F.3d at 1280. The plaintiffs encountered numerous barriers to access. *Id.* at 1281–83. On appeal of the district court's order granting in part and denying in part the parties' cross-motions for summary judgment, the Tenth Circuit found that the plaintiffs "ha[d] established an injury in fact that [was] sufficiently impending to support standing to seek prospective relief." *Id.* at 1285; *see also id.* at 1285 n.12. Specifically, even though most of the plaintiffs did not live in the area, and only utilized the bus system for test purposes, the *Tandy* court reasoned that "testimony of an intent to use buses 'several times per year' suggests

a concrete, *present* plan" to use the buses "several times *each* year, including the year in which [the plaintiffs] made that statement." *Id.* at 1284; *see also id.* at 1285 n.12.  Similarly, in *Colorado Cross*, the Tenth Circuit found that an intention to return to a store in a mall "at least six times per year" was sufficient to establish an injury in fact.  *Colo. Cross*, 765 F.3d at 1211–12. The *Colorado Cross* court reasoned that the plaintiff's intentions mimicked the intentions in *Tandy* to use the bus system several times each year.  *Id.*  It made no difference to the court that the particular mall complained of was not "the closest" to the plaintiff's home.  *Id.* at 1212.

In other words, *Tandy* and *Colorado Cross* both reflect the Tenth Circuit's considerations of the four factors identified above: (1) the proximity of those defendants' businesses to the plaintiffs' respective residences, (2) the plaintiffs' past patronages of the defendants' businesses, (3) the definitiveness of the plaintiffs' plans to return, and (4) the plaintiffs' frequency of travel near the defendants.  *See Tandy*, 380 F.3d at 1281–85; *Colo. Cross*, 765 F.3d at 1211–12. Moreover, this four-factor test finds support in decisions from other districts.  *See, e.g.*, *Kennedy v. Floridian Hotel, Inc.*, 1:18-CV-20839-UU, 2018 WL 10601977, at *5 (S.D. Fla. Dec. 7, 2018) (on summary judgment, explaining that "Defendant correctly notes that Courts are generally guided by four factors in" determining an intention to return to the place of public accommodation: "(1) the definitiveness of plaintiff's plan to return; (2) plaintiff's past patronage of defendant's business; (3) the proximity of the place of public accommodation to plaintiff's residence; and (4) the plaintiff's frequency of travel near defendant"); *Vogel v. Winchell's Donut Houses Operating Co.*, LP, 252 F. Supp. 3d 977, 984 (C.D. Cal. 2017) (on summary judgment, explaining that "[t]o flesh out a plaintiff's intent to return, a court may look at the proximity of the facility to the plaintiff's residence, plaintiff's past patronage, plaintiff's concrete plans, and plaintiff's frequency of travel near the facility").

Some courts in the District of Colorado—also relying upon *Colorado Cross* and *Tandy* – have articulated a separate "intention test," where the operative inquiry is "whether a plaintiff intends to return to or use the allegedly non-complying premises in the future in order to determine if the plaintiff has standing for prospective relief without reference to any specific factors. *See Brito*, 2021 WL 4149619, at *3 (citing *Colo. Cross*, 765 F.3d at 1211 and *Tandy*, 380 F.3d at 1283-84). This Court recognizes that the four-factor test fits under the general rubric of the intention test, and the Tenth Circuit case law does not indicate that the four factors are exhaustive. But like the *Brito* court, this Court finds that, regardless of the test used, the substantive outcome is the same.

### 3. Application

Here, the court finds that the four factors weigh against Plaintiff. ***First***, with respect to the proximity of Plaintiff's residence to the Grocery Store, in his affidavit submitted with the Response, Plaintiff declares he is a "resident of California," [Doc. 40-1 at ¶ 2], and there is no dispute that the Grocery Store at issue is in Colorado—which is several states and approximately a thousand miles away. A grocery store in another state is not such a public accommodation that one generally would use so far away from one's residence. *See Molski v. Mandarin Touch Rest.*, 385 F. Supp. 2d 1042, 1045 (C.D. Cal. 2005) ("As the distance between the plaintiff's residence and the public accommodation increases, the likelihood of future harm decreases. When the distance between the two is significant, especially if it is in excess of 100 miles, courts have consistently held that it weighs against finding a reasonable likelihood of future harm."); *cf. Cohan v. Aurora Hosp., LLC*, No. 19-cv-00784-PAB-NRN, 2020 WL 1322866, at *3 (D. Colo. Mar. 20, 2020) (explaining that although the plaintiff's residence was "not in close proximity to the hotel, . . . proximity [was] not, by itself, a helpful metric" because a hotel "'is almost always used only

when one is far away from his residence'" (quoting *Norkunas v. HPT Cambridge LLC*, 969 F. Supp. 2d 184, 192 (D. Mass. 2013)).

**Second**, as to Plaintiff's past patronage of the Grocery Store, Mr. Meggs avers that he visited the Grocery Store only one time on May 22, 2021. [Doc. 40-1 at ¶¶ 7, 8]. A plaintiff is not required to visit an out-of-compliance store more than once to have standing. *See Colo. Cross*, 765 F.3d at 1208–13 (finding no standing issue with a plaintiff who only visited an allegedly out-of-compliance store once before filing suit); *see also Tandy*, 380 F.3d at 1284–89. The mere existence of past patronage, however, does not alone provide standing unless a plaintiff can establish a "*reasonable* likelihood that [the plaintiff] is likely to return." *Judy v. Pingue*, No. 2:08-CV-859, 2009 WL 4261389, at *4 (S.D. Ohio Nov. 25, 2009) (emphasis added); *cf. Bernstein v. City of New York*, 621 F. App'x 56, 58–59 (2d Cir. Oct. 26, 2015) ("[P]ast frequency of visits is a key factor in determining intent to return."). As the following factors show, Mr. Meggs fails to establish he is likely to return to the Grocery Store.

**Third**, as to the definitiveness of plaintiff's plans to return, Mr. Meggs argues that, given that unremediated architectural barriers exist, he is deterred from patronizing Defendant's Grocery Store until those barriers are removed. *See* [Doc. 40 at 9–11]. However, in his affidavit, Mr. Meggs states nothing about deterrence. Rather, he avers that he "visited the subject property on May 22, 2021 [and] *will continue to do so*," without any reservation. [Doc. 40-3 at ¶ 8 (emphasis added) ]. Defendant insists that Plaintiff's representations in his affidavit are insufficient, and notes that Plaintiff fails to "even mention Commerce City, Colorado" at all. [Doc. 41 at 7].

In addition, as mentioned, injury in fact "must be supported with . . . the manner and degree of evidence required at the [pertinent], successive stages of litigation." *Lujan*, 504 U.S. at 561. At the time of the Complaint, which is the time at which the Court analyzes standing, *see Tandy*, 380

F.3d at 1284 (citation omitted), Mr. Meggs alleged that he planned to "return to the property within four (4) months' time of the filing of [the] Complaint." [Doc. 1 at ¶ 16]. However, Mr. Meggs filed the Complaint on July 27, 2021, *see* [Doc. 1]; and, notably, his affidavit, dated May 27, 2022, does not state he returned to the Grocery Store any time after May 22, 2021, nor does he articulate any definitiveness with respect to his purported intent to return to the Grocery Store. *Compare* [Doc. 40-3 at ¶ 8 ("I visited the subject property on May 22, 2021 will [sic] continue to do so.")] *with Tandy*, 380 F.3d at 1284 ("In contrast, the plaintiffs in [*Lujan*], whom the Supreme Court held did not show an 'injury in fact,' had merely expressed a desire to *someday* visit places halfway around the world.").

*Fourth*, with respect to frequency of travel near the Grocery Store, Mr. Meggs asserts in his affidavit that (1) he "travel[s] frequently to other parts of the country including Colorado and Florida"; (2) he "often visit[s] Colorado and Florida" because of his "position as President of the Not-for-Profit Corporation, Access 4 All, Incorporated"; (3) "[s]everal officers of Access 4 All, Incorporated are Florida residents" and Plaintiff "often meet[s] with them and other members in Colorado and in Florida"; and (4) he has "several family members who are rap artists and [ ] often travel[s] all across the country to watch their performances and support them and it is another reason [he] visit[s] the Miami [sic] area frequently." [Doc. 40-3 at ¶¶ 2, 4–6].

None of Plaintiff's assertions sufficiently establish that Plaintiff frequently travels near the Grocery Store. Indeed, Plaintiff's affidavit fails to even mention Commerce City, Colorado or *any* specific county, city, or geographic location near the Grocery Store. *See generally* [*id.*]. And Plaintiff's references to Florida and his frequent visits to "the Miami area" to visit "family who are rap artists" make no sense here as the Grocery Store at issue is in Commerce City, Colorado. [*Id.* at 6–7]. *See Laufer v. Looper*, No. 20-cv-02475-NYW, 2021 WL 330566, at *8 (D. Colo. Jan.

11, 2021) (finding the plaintiff failed to establish an actual or imminent injury where, *inter alia*, her declaration "contain[ed] only conjectural or speculative assertions that she intend[ed] to visit Colorado in the future and no suggestion that she specifically [sought] to visit Craig, Colorado"), *aff'd*, 22 F.4th 871 (10th Cir. 2022); *Laufer v. Ft. Meade Hosp., LLC*, No. 8:20-CV-1974-PX, 2020 WL 6585955, at *4 (D. Md. Nov. 10, 2020) ("Mere incantations of some amorphous intent to visit this particular hotel, without more, will not save her claim.").

In his Response, Mr. Meggs insists that this Court should apply the Ninth Circuit's holding in *Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1137 (9th Cir. 2002). [Doc. 40 at 10]. The *Pickern* court held that

> a disabled individual who is currently deterred from patronizing a public accommodation due to a defendant's failure to comply with the ADA has suffered "actual injury." Similarly, a plaintiff who is threatened with harm in the future because of existing or imminently threatened non-compliance with the ADA suffers "imminent injury."

293 F.3d at 1138. According to Mr. Meggs, this holding "suggests" he can establish an injury in one of two ways: by showing (1) he has been deterred from returning to the Grocery Store "because of the certainty that plaintiff could not gain access at all, or might suffer humiliation, burden, or danger in attempting to do so"; or (2) an "imminent threat of future injury from the continuing Title III violations." [Doc. 40 at 10]. Based on these foregoing characterizations, Mr. Meggs contends that he has been deterred from returning to the Grocery Store on the basis that, "despite [his] intent to return, because Defendant, via their own admissions have not remediated the property, it would be a futile gesture on Mr. Meggs' part and would cause him additional injury and distress." [*Id.*].

The Court finds Plaintiff's argument unpersuasive for at least two reasons. First and foremost, *Pickern* is not controlling law in the Tenth Circuit and this Court finds no basis to depart from binding Tenth Circuit precedent. As explained above, under Tenth Circuit law, Plaintiff has

failed to adduce sufficient evidence on summary judgment to establish a concrete, present intention to return to the Grocery Store.  Second, the specific factual circumstances underlying the *Pickern* plaintiff's assertion of standing are materially different than those Mr. Meggs's presents here.  The *Pickern* court found that the plaintiff established a "threatened future injury" because the plaintiff alleged that "the barriers deterred him from entering the [Holiday Foods grocery] store just before filing suit, when he needed something from the store and was obliged to remain in the parking lot." *Pickern*, 293 F.3d at 1137.  The plaintiff also provided a declaration stating his "favorite grocery store chain is the Holiday Foods grocery stores."  *Id.* at 1135.  Notably, although the plaintiff alleged ADA violations by the Holiday Foods grocery store in Paradise, California—which was 70 miles away from his residence in Cottonwood, California—the plaintiff alleged that "his grandmother lives in Paradise and [the plaintiff] visits Paradise frequently to see her."  *Id.*  In addition, the plaintiff testified at his deposition that he "tr[ied] to go every Sunday to see [his] grandmother" and "go[es] up [to Paradise] all the time." *Id.* (quotation marks omitted).  Here, Mr. Meggs' affidavit does not provide anywhere near the information the *Pickern* plaintiff submitted regarding his intention to return to the grocery store in that case.  *See* [Doc. 40-1 at ¶¶ 2–7, 8 (averring he resides in California, visits the state of "Colorado" generally, and "visited the subject property on May 22, 2021 [and] will continue to do so").

In sum, the court finds that Plaintiff fails to adduce sufficient evidence at summary judgment that "suggests a concrete, present plan to return to" the Grocery Store to establish an injury in fact.  *Colo. Cross*, 765 F.3d at 1211.  Thus, Plaintiff's sole claim against Dillon under Count II must be dismissed without prejudice for lack of standing.  *See Vogel*, 252 F. Supp. 3d at 983 (C.D. Cal. 2017) (on summary judgment, finding the plaintiff failed to establish a concrete injury based on an intent to return where the restaurant at issue was part of a national chain and

the plaintiff "could easily find a closer location" to his stated residence; the plaintiff failed to provide a reason for his frequent travel to the location of the restaurant; the plaintiff's past patronage of the restaurant was unclear; although the plaintiff intended to return in the future, he admitted he did "not have specific plans to return at this time"); *Access 4 All v. Oak Spring*, Inc., No. 5:04-CV-75-OC-GRJ, 2005 WL 1212663, at *4 (M.D. Fla. May 20, 2005) (finding the plaintiffs failed to establish standing on summary judgment where, other than one plaintiff's "bald assertion" that he planned to return to the public accommodation, the plaintiffs had "presented no evidence of a threat of future injury, and, in fact, the record evidence establishe[d] that the possibility of future injury is speculative at best"); *Brother v. Tiger Partner, LLC*, 331 F. Supp. 2d 1368, 1373 (M.D. Fla. 2004) (on summary judgment, concluding the plaintiff failed to satisfy the requirements of Article III standing where a disabled claimant brought an ADA claim against a hotel, based on the following factors: (1) the plaintiff lived more than 280 (two-hundred and eighty) miles from the hotel and only traveled to the general area of the hotel twice a year; (2) the plaintiff lacked a continuing connection to the hotel; and (3) there were "countless other hotels closer to Disney World," which contradicted the plaintiff's claim that he stayed at the hotel because of its proximity to Disney World); *cf. Lujan*, 504 U.S. at 564 (explaining that "'some day' intentions—without any description of concrete plans, or indeed even any specification of when the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require"); *cf. Colo. Cross*, 765 F.3d at 1211–12 (on appeal from the district court's ruling on summary judgment in favor of plaintiff, finding the plaintiff had standing to seek prospective relief where the plaintiff submitted two affidavits declaring that she intended to return to the public accommodation "at least six times per year"); *Doran v. 7–Eleven, Inc.*, 524 F.3d 1034, 1040–41 (9th Cir. 2008) (sincere intent to return where plaintiff had visited 7–Eleven store ten to twenty

times previously, the store was near his favorite restaurant and near Disneyland where he planned to visit at least once a year, and he testified in deposition that he would return to the store once the access barriers were fixed); *Cohan*, 2020 WL 1322866, at *5 (finding the plaintiff established an injury in fact where the plaintiff "allege[d] that he travels to Denver three to four times each year and would return to the hotel if the barriers were removed").

### E.    Fees and Costs

Dillon also argues that Mr. Meggs is not entitled to fees and costs insofar as he is not the prevailing party.  For support, Defendant cites *Kelley v. Smith's Food & Drug Centers, Inc.*, 793 F. App'x 787 (10th Cir. 2019), where the Tenth Circuit explained that "the term *prevailing party* does not include 'a party that has failed to secure a judgment on the merits or a court-ordered consent decree, but has nonetheless achieved the desired result *because the lawsuit brought about a voluntary change in the defendant's conduct*.'"  *Kelley*, 793 F. App'x at 791 (emphasis added) (citation omitted).  Defendant appears to argue that Plaintiff is not the prevailing party on the basis that Defendant has voluntarily remedied the violations alleged in the Complaint, and thus Plaintiff's claim is moot.  *See* [Doc. 33 at 14–15].  As noted above, however, Defendant's mootness argument fails because Defendant implicitly concedes that all the remediations have not been performed to the restroom barriers identified in the Complaint.  *See supra* note 7.  In any event, irrespective of any remediations Defendant claims to have performed, the court has found that Plaintiff fails to establish standing to maintain his claim against Defendant.

In addition, Defendant moves for an award of fees and costs under 42 U.S.C. § 12205.  *See* [Doc. 33 at 15].  Title 42 U.S.C. § 12205 provides that, in ADA cases, "the court or agency, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs."  In *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412 (1978), the Supreme Court held that a district court may only "award attorney's fees to a

prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation." *Id.* at 421. The Tenth Circuit has determined that this standard "applies as well to the recovery of attorney's fees by prevailing defendants in ADA actions." *Twilley v. Integris Baptist Med. Ctr., Inc.*, 16 F. App'x 923, 926 (10th Cir. 2001) (unpublished).

The court respectfully denies Defendant's request for three reasons. First, apart from its assertion that the Motion for Summary Judgment "should be granted in its favor," [Doc. 33 at 15], Defendant presents no other basis for its request.[8] *See United States v. Cooper*, 654 F.3d 1104, 1128 (10th Cir. 2011) ("It is well-settled that arguments inadequately briefed in the opening brief are waived." (alteration omitted) (internal quotation marks omitted)); *United States v. Hunter*, 739 F.3d 492, 495 (10th Cir. 2013) (cursory argument not meaningfully developed by any analysis or citation is deemed waived). Second, Defendant's request for attorney's fees does not comport with this District's Local Rules of Civil Practice. *See* D.C.COLO.LCivR 54.3 (requiring a separate motion for attorney's fees accompanied by an affidavit).

Third, with respect to costs, while Defendant seeks its costs pursuant to 42 U.S.C. § 12205, it is Federal Rule of Civil Procedure 54(d)(1) that more appropriately governs the award of costs in this case. *See M.T. by and through Lisa W. v. Denver Pub. Sch. Dist.*, No. 18-cv-00338-PAB, 2018 WL 5298385, at *1 (D. Colo. Oct. 24, 2018) (finding it "unwarranted" to apply fee-shifting in ADA cases to costs, as "Rule 54(d)(1), not § 12205 . . ., governs the award of costs" in an ADA case). And, although Rule 54(d)(1) provides that costs should generally "be allowed to the

---

[8] Defendant argues that this Court has "awarded attorney's fees upon granting a defendant's Motion to Dismiss styled as a Motion for Summary Judgment under the same facts and circumstances," relying upon the Court's order in *Nekouee v. Dillon Companies, LLC*, No. 19-cv-2498-RMR-MEH, ECF No. 82, at 2–3 (Oct. 14, 2021). However, that order mentions nothing about attorney's fees.

prevailing party," the district court may in its discretion decline to award costs where a "valid reason" exists for the decision. *See, e.g.*, *In re Williams Sec. Litig.-WCG Subclass*, 558 F.3d 1144, 1147 (10th Cir. 2009) (citations omitted). Here, Defendant relies on its purported remediations of the architectural barriers as the basis for its request for costs, *see* [Doc. 33 at 14–15], but also contemporaneously acknowledges that it has not remediated all of the barriers alleged in the Complaint, *compare* [Doc. 1 at ¶ 26.B.] *with* [Doc. 41 at 8 ("Dillon is constructing new restrooms")].[9] Thus, this Court finds that it is more appropriate for each Party to bear its own costs associated with this action.[10]

## CONCLUSION

For the reasons stated herein, **IT IS ORDERED** that:

(1)     Defendant's Motion for Summary Judgment [Doc. 33] is **GRANTED IN PART**;

(2)     Plaintiff's remaining claim against Defendant Dillon Companies, LLC under Count II is **DISMISSED without prejudice**;

(3)     All remaining hearings and deadlines, including the November 28, 2022 Trial Preparation Conference and three-day Bench Trial beginning November 30, 2022, are **VACATED**;

(4)     The Clerk of the Court is **DIRECTED to ENTER** judgment in favor of Defendant Dillon Companies LLC and against Plaintiff John Meggs; and

---

[9] On Reply, Defendant contends that "Plaintiff does not dispute that Dillon remedied the barriers Plaintiff alleged he encountered" and "Plaintiff makes no claim he encountered barriers in the King Soopers restrooms." [Doc. 41 at 9]. However, Plaintiff's Response expressly contradicts both of these assertions, citing to Defendant's expert report for support. *See, e.g.*, [Doc. 40 at 1 ("Defendant's motion only discusses the issues with counters and does not discuss the ADA issues with the restroom and Defendant's contention that it has fully remediated the property is contradicted by its own expert report.")]; *see also* [Doc. 33-1; Doc. 33-2].

[10] As previously mentioned, *see supra* note 7, the Court expressly does not pass on the merits of Defendant's assertion that it is "not subject to the 2010 [ADA] Standards." [Doc. 33 at 3].

(5)     To the extent that any Party seeks fees, the Party shall move separately for such

relief no later than **September 16, 2022**.

DATED:  September 6, 2022                                        BY THE COURT:

_____

Nina Y. Wang
United States District Judge